1
2
3
4
5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

JOHN WILLIAM STOREY,

        Plaintiff,

v.

CHELAN COUNTY, a municipal
corporation, CHELAN COUNTY
SHERIFF'S OFFICE, a division of
Chelan County, DETECTIVE
MANNY BRINCAT, individually and
in his capacity as a Chelan County
Police Officer, DETECTIVE MITCH
MATHESON, individually and in his
capacity as a Chelan County Police
Officer, LIEUTENANT JERRY
MOORE, individually and in his
capacity as a Chelan County Police
Officer, SHERIFF MICHAEL
HARUM, individually and in his
capacity as a Chelan County Police
Officer, GINO M. FINO, individually
and in her capacity as a Chelan County
Coroner, DOES 1-20,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-10-0162-LRS

**ORDER RE SUMMARY
JUDGMENT MOTION**

21
22
23
24
25
26
27
28

    **BEFORE THE COURT** is the Defendants' Motion For Summary
Judgment (Ct. Rec. 14), noted without oral argument on April 1, 2011.  Chelan
County, Chelan County Sheriff's Office, Detective Manny Brincat, Detective
Mitch Matheson, Lieutenant Jerry Moore, Sheriff Michael Harum and Dr. Gino M.
Fino[1] (collectively referred to as the "Defendants") move for summary judgment,
pursuant to Fed. R. Civ. P. 56, on all of Plaintiff's claims.  Plaintiff opposes the

---

    [1]Based on the signed autopsy report dated July 9, 2008, the Defendant
coroner's correct name is Gina M. Fino, M.D. rather then Gino M. Fino, M.D.

**ORDER RE SUMMARY JUDGMENT MOTION-1**

motion based on his contention that genuine issues of material fact exist as to each of his four claims.

## I. BACKGROUND

This is a 42 U.S.C. § 1983 action brought against Chelan County, Chelan County Sheriff's Office, four of its police officers, and its coroner.  Plaintiff alleges claims for unlawful imprisonment, malicious prosecution, defamation and negligence.   Each of these causes of actions center around Plaintiff's arrest and imprisonment following the death of his girlfriend, Donna Taylor, which death occurred under unusual and seemingly suspicious circumstances.  Plaintiff alleges Defendants ignored exonerating evidence tending to indicate Ms. Taylor's death was a suicide rather than a homicide.  Plaintiff alleges Defendants' acts led to his extended detainment for nearly eight months, before his case was finally dismissed with prejudice by the Chelan County Prosecutor.

## II. FACTS

On March 25, 2008, Donna Taylor was found shot, under unusual circumstances. Plaintiff and Donna Taylor were  domestic partners for seventeen years prior to her death.  Ms. Taylor suffered from severe depression and bipolar disorder.  Ms. Taylor was drinking heavily in the days leading up to her suicide.  Ms. Taylor had a history of prior suicide attempts and had engaged in previous instances where she would pick up a gun and point it at herself.  Two days prior to her death, Ms. Taylor was taken by ambulance to Central Washington Hospital as a result of severe intoxication.  On the evening of Ms. Taylor's death, she was drinking vodka mixed with a fruit drink.

On the afternoon of Ms. Taylor's death, Plaintiff was target shooting with a friend.  Upon his return home, Plaintiff found Ms. Taylor on the floor of the bedroom and believed that she was passed out.  It was dark in the room and there were no lights.  Plaintiff saw a gun on the bed near Ms. Taylor and he moved it to another room for safety purposes.  Plaintiff called 911 to report that Ms. Taylor shot herself. Plaintiff informed the 911 operator he had been out shooting that day

**ORDER RE SUMMARY JUDGMENT MOTION-2**

and would have gunpowder on his hands.   Plaintiff refused to perform CPR on Ms. Taylor while on the phone with the 911 operator.

Several law enforcement officers responded, as well as an emergency aide vehicle.  Ms. Taylor was pronounced dead on the scene.  Two detectives, Defendants Manny Brincat and Mitch Matheson, also arrived at the scene of the shooting and assumed primary responsibility for the investigation.   When police officers arrived, Plaintiff told them that Ms. Taylor had shot herself, that she had been drinking, and that she had attempted to have herself hospitalized two days prior.  The lead detectives, Brincat and Matheson, through initial efforts, determined the death to be a homicide and that probable cause existed to place Plaintiff under arrest.

Among the facts that were used in probable cause determination were:  1) Plaintiff's significant criminal history, including fourth degree assault-domestic violence and interfering with reporting domestic violence; 2) Plaintiff informed the 911 operator that he had been out shooting all day and his hands would have gunpowder on them; 3) Plaintiff refused to perform CPR on Ms. Taylor while on the phone with the 911 operator; 4) Plaintiff denied entry to a neighbor who had arrived to provide help, which Plaintiff later claimed was to avoid disturbing the scene; 5)Plaintiff moved the gun that had shot Ms. Taylor before the detectives arrived; 6) investigators, upon inspection of the bedspread, failed to find any indication that the gun had been located on the bed after the shooting (e.g. there was no blood or gunpowder residue); 7) when questioned about moving the firearm, Plaintiff claimed he was concerned that Ms. Taylor would use it to shoot him if she was revived; 8) Plaintiff and Ms. Taylor were inside a small trailer at the time of the shooting but when questioned, Plaintiff claimed he didn't hear the gunshot but thought the sound he heard was the wood stove's damper;  9) investigators manipulated the damper but were unable to produce any sound like a "gunshot;" 10) a neighbor who apparently was at the trailer when Ms. Taylor died stated he observed Ms. Taylor sleeping on the bed in her room and that he saw her

**ORDER RE SUMMARY JUDGMENT MOTION-3**

move between the time Plaintiff heard the "sound" and the time Plaintiff discovered Ms. Taylor; 11) investigators initially concluded that Ms. Taylor's wound was not a contact wound due to the absence of stippling and lack of gunshot residue around the wound, which is often present with a suicide; 12) investigators did not observe any blood splatter on Ms. Taylor's hands, as would be expected in a suicide; and 13) the day after the shooting, investigators talked to neighbors who stated they had previously: a) seen Plaintiff point a loaded gun at Ms. Taylor; b) been told by Ms. Taylor that Plaintiff had heated up a fork and "branded" Ms. Taylor;  and c) Ms. Taylor appeared to have been in a "good mood" just before the shooting.

Plaintiff was taken into custody on the evening of March 25, 2008, where he remained until October 28, 2008.  On March 26, 2008, the Honorable Judge Small of the Chelan County Superior Court, confirmed the presence of probable cause from a review of the affidavit prepared by Defendant Detective Matheson.  The prosecutor, Gary Riesen, began to pursue the state's case against Plaintiff.  The Defendant detectives continued to investigate the matter at the prosecutor's request.

The Death Investigation Toxicology report provided to the Chelan County Coroner's office dated April 24, 2008, indicated that Donna Taylor had a .24 blood alcohol level and that she tested positive for Librium and Diazepam, among other drugs, at the time of her death.   On May 2, 2008, attorney Nick Yedinak was appointed to represent Plaintiff in the criminal matter *State v. Storey*.  Yedinak replaced Mr. Storey' former appointed  counsel, Jeremy Ford, who resigned due to a conflict.  Partly due to the replacement of counsel, the original trial date of May 20, 2008 was continued.  In all, the trial was continued a total of six times, either at the insistence or with the agreement of Plaintiff.  On October 28, 2008, following the final continuance,  Plaintiff was released after his attorney requested bail be reduced, to which request the state agreed.  At the bail hearing, a second

**ORDER RE SUMMARY JUDGMENT MOTION-4**

judge, the Honorable John Bridges, again found probable cause existed for the continued prosecution of Plaintiff.

An autopsy report of Ms. Taylor dated July 9, 2008, was completed and signed by Defendant coroner Gina Fino, M.D.  Dr. Fino's initial impression was that the gunshot wound to Donna Taylor's chest was a contact wound. However, law enforcement officers were adamant with Dr. Fino that Ms. Taylor's wound was a distance wound and consistent with a homicide. (Yedinak Declaration ¶ 5).  Dr. Fino found gunpowder in Ms. Taylor's wound on April 1, 2008, indicating a contact wound.  Dr. Fino sent her initial findings to a colleague in Pierce County who relayed his opinion that the wound appeared to be a contact wound.  According to the Crime Lab Report dated September 8, 2008, gunpowder and vaporous lead, consistent with a contact wound, was found on Ms. Taylor's sweatshirt.  Defendant Fino's July 9th autopsy report, however, indicated the manner of Ms. Taylor's death was a homicide, despite forensic evidence that the gunshot wound was a contact wound.

In a conversation with Mr. Yedinak on or about August 1, 2008, Defendant Fino stated, "I treat all shootings as homicides unless proven otherwise."  Despite being presented with evidence that the gunshot wound was a contact wound, Defendant officers allegedly made false statements to the press indicating that the gunshot was from a distance and indicated a homicide.  (Aronson Declaration, Exhibits 3-7).  Plaintiff denies that he ever pointed a handgun at Ms. Taylor nor did he ever brand her with a fork as alleged by Ms. Taylor's friends.

On January 14, 2009, the case against Plaintiff Storey was dismissed with prejudice.  The prosecutor's decision to dismiss was based on the following: (1) a series of mental health reports on Ms. Taylor, some of which indicated suicidal tendencies,  received and reviewed by prosecution during the period of May 5, 2008 - November 12, 2008; (2) a report prosecution received on December 18, 2008 from Cascade Ambulance, which had transported Ms. Taylor to the hospital two days before her death for the purpose of detoxification; and (3) ballistic

**ORDER RE SUMMARY JUDGMENT MOTION-5**

reports from the tests, conducted with Plaintiff's counsel present on June 27, 2008, revealed a probability that Ms. Taylor's wound was a contact wound (i.e. the weapon may not have been fired from a distance). On January 16, 2009, Plaintiff Storey took and passed a polygraph test in an effort to clear his name.

## III.  DISCUSSION

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**ORDER RE SUMMARY JUDGMENT MOTION-6**

### B.  42 U.S.C. Section 1983-Liberty Interest/Unlawful Imprisonment

Plaintiff alleges in the Complaint that his liberty interest under the Fourteenth Amendment was violated.  Specifically, Plaintiff's action under 42 U.S.C. §1983 against Defendant law enforcement officials is premised upon Defendants' alleged failure to investigate and disclose exonerating evidence and wrongfully influencing the Defendant coroner's report, which resulted in his alleged unlawful imprisonment for approximately eight months.

Defendants argue that they had no duty to investigate and disclose exculpatory information to a defendant (Plaintiff in this case) because their only duty was to disclose exculpatory information to the prosecutor. Further, Defendants assert, the officers discovered the exculpatory evidence only after probable cause already existed.

Plaintiff responds that a question of fact exists as to whether Defendant officers did disclose exculpatory evidence to the prosecutor.  Plaintiff states that evidence exists showing that Defendants not only ignored exculpatory evidence, but used their positions of authority to influence the forensic examiner (Defendant coroner) to alter her conclusions notwithstanding the exculpatory evidence.   This alleged conduct, Plaintiff argues, lead to a substantial delay in a finding that Ms. Taylor's wound was a contact  wound , which finding was a factor considered in the eventual dismissal of the charges by the prosecutor.

Defendants finally argue that the Defendant officers and Defendant coroner possess absolute immunity and cannot be liable as to the conduct complained of by Plaintiff because such conduct occurred after the initial criminal proceeding, where probable cause was confirmed by the state court judges.  Defendants note that Plaintiff does not argue that the Defendant officers ignored exonerating evidence prior to the shift from investigation to prosecution (i.e., prior to the initial hearing).

### 1.    Pre-Arrest--§1983 Claim Against Defendant Officers; Immunity

To the extent Plaintiff's Fourteenth Amendment (liberty interest)  claim is

**ORDER RE SUMMARY JUDGMENT MOTION-7**

based on his arrest, the Court finds that Plaintiff has failed to show the deprivation of a federal right.  Further, the Defendant officers possess qualified immunity because the subject arrest was based on valid probable cause. An arrest is unlawful unless there is probable cause to believe a specific criminal statute has been or is being violated.  *Devenpeck v. Alford*, 543 U.S. 146, 152, 124 S.Ct. 588 (2004). Because probable cause is a wholly objective "reasonable officer" standard, the officer's subjective motivation is irrelevant.  *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996).  Here, Defendant officers/detectives, Manny Brincat and Mitch Matheson, had probable cause to arrest Plaintiff for an alleged homicide.  An arrest does not violate Plaintiff's constitutional rights, i.e., the Fourth Amendment, if it was based upon probable cause.  Where probable cause does exist, civil rights are not violated by an arrest even though innocence may subsequently be established.  *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966).

Probable cause exists if, at the moment the arrest is made, facts and circumstances within the investigating officer's collective knowledge are sufficient to warrant a prudent person's belief that the suspect has probably violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534 (1991); *see also Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317 (1983). It does not appear that the parties dispute the finding of judicial officers that probable cause existed when Plaintiff was arrested.  The Supreme Court has held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987).

The officers are entitled to qualified immunity against Plaintiff's claim of a due process violation and an invasion of privacy (liberty interest) under the Fourteenth Amendment because Plaintiff does not have a substantive due process right to be free of an arrest which was based on probable cause. *Albright v. Oliver*, 510 U.S. 266, 270, 114 S.Ct. 807 (1994).  Due process does not entitle an

**ORDER RE SUMMARY JUDGMENT MOTION-8**

individual to process prior to an arrest based on probable cause. *U.S. v. One 1967 Porsche*, 293 F.2d 893, 895 (9th Cir. 1974). Moreover, the Ninth Circuit has held that police action to effectuate an arrest based on probable cause does not give rise to a cause of action under 42 U.S.C. § 1983. *Strutt v. Upham*, 440 F.2d 1236, 1237 (9th Cir. 1971) (*citing Pierson v. Ray*, 386 U.S. 547, 557, 87 S. Ct. 1213 (1967); *Notaras v. Ramon*, 383 F.2d 403, 404 (9th Cir. 1967)).

The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Section 1983 alone does not create substantive rights; rather, it is a vehicle by which plaintiffs can assert claims based upon federal rights created by other statutes. *See Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). In order to establish liability under § 1983 against state officials, a plaintiff must show that the officials, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (*citing Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). The terms of § 1983 demand only two allegations: (1) that a person deprived the plaintiff of a federal right, constitutional or statutory; and (2) that the person acted under color of state law when depriving the plaintiff of the federal right. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). If either element is missing, then a § 1983 claim has not been pleaded. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir.1991).

An arrest based on probable cause is not an actionable invasion of privacy, although possibly inconvenient and perhaps invasive, it is merely a lawful arrest. The fact that a person is later acquitted does not necessarily make the previous arrest actionable, however. *Sennett v. Zimmerman*, 50 Wash.2d 649, 314 P.2d 414 (1957). Plaintiff has failed to identify a violation of an existing constitutional right under the Fourteenth Amendment, given that the Defendant officers had

**ORDER RE SUMMARY JUDGMENT MOTION-9**

statutory authority and probable cause to arrest Plaintiff.   Defendant officers also possess qualified immunity against Plaintiff's Fourteenth Amendment claim to the extent Plaintiff's Fourteenth Amendment claim is based on his arrest.

## 2.    Post-Arrest--§1983 Claim Against Defendant Officers; Immunity

Plaintiff has not set forth sufficient facts to show an arrest was made without probable cause, therefore, this case now turns on the lawfulness of the detention of a person arrested with probable cause but dismissed based, in part, on exonerating evidence.  In challenging his eight-month detention after the arrest, Plaintiff frames the constitutional issue as one arising under the Fourteenth Amendment.  Plaintiff appears to argue his substantive due process rights to liberty were violated.

The tenet of Defendants' argument in the motion for summary judgment is that the conduct complained of by Plaintiff occurred after the initial hearing. Defendants argue that Plaintiff only complains that the officers ignored exonerating evidence after the shift from investigation to prosecution.  Defendants argue that in the conduct of investigating to determine whether probable cause exists in order to arrest, officers are conducting an investigative function and only possess qualified immunity. *Broam v. Bogan*, 320 F.3d 1023, 1033 (9th Cir. 2003).  Defendants further assert that after the time of arrest and the initial hearing (i.e., the determination of probable cause), officers are absolutely immune as they are then working to gather evidence to present to the trier of fact.  Ct. Rec. 42, at 4.  Defendants conclude that the Defendant officers possess absolute immunity as to the conduct complained of by Plaintiff.

Plaintiff asserts, citing *Kellogg v. Washington*, 94 Wn.2d 851 (1980), that a lawful arrest does not foreclose consideration of facts surrounding the subsequent imprisonment.  Plaintiff argues that a question of material fact exists as to whether the continuing detainment of plaintiff was lawful after exonerating evidence indicated that Ms. Taylor's death could be a suicide rather than a homicide. Specifically, Plaintiff states that one of the primary reasons for the dismissal of the

**ORDER RE SUMMARY JUDGMENT MOTION-10**

claim against Plaintiff, as noted in the January 14, 2009 special minutes, was Defendant Fino's admission that based on her initial autopsy report, the forensic evidence showed that the wound to Ms. Taylor could indeed have been a contact wound.

Persons injured by police activity which does not appear to violate a specifically enumerated constitutional right may argue that the conduct violates their substantive due process rights to life or liberty. Although the Supreme Court has been generally unreceptive to substantive due process claims, it explicitly recognized in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) that where conduct is not covered by a more definite provision of the Constitution, it may constitute a substantive due process violation. The issue in such cases is what standard of proof must be met to establish a constitutional violation.  In *Lewis*, the court reiterated that the touchstone of due process is protection of the individual against arbitrary action of government.  The court underlined that only the most egregious official conduct can be said to be arbitrary in the constitutional sense. *Id.* at 845.  The court concluded that abuses of executive power which reached that level of arbitrariness are those which "shock the conscience".  *Id*. at 846.

Under § 1983, an official sued in his or her individual capacity has qualified immunity from suit if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This doctrine recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Id.* at 807, 102 S.Ct. 2727. Therefore, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  Qualified immunity is not simply a defense to liability, it is an immunity from suit. See *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir.2005) (if qualified immunity applies, an officer "should not be subject to

**ORDER RE SUMMARY JUDGMENT MOTION-11**

liability or, indeed, even the burdens of litigation").

First the Court must determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," and courts should not "assum[e], without deciding, this preliminary issue").

To determine whether a state law enforcement officer or a prosecutor is entitled to qualified, as opposed to absolute, immunity a court must decide whether the alleged unconstitutional conduct occurred during the performance of an investigative function. Examples of when a law enforcement officer performs an investigative function include gathering physical evidence and conducting interrogations to determine whether a crime has been committed and whether probable cause exists to arrest a suspect. *See, e.g., Buckley*, 509 U.S. at 273-74, 113 S.Ct. 2606 (stating that "the detective's role [is] searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested"); *Franklin v. Fox*, 312 F.3d 423, 438-39 (9th Cir.2002) (granting qualified immunity to police officers who reasonably believed there was probable cause to arrest the plaintiff).

Once probable cause to arrest someone is established, however, a law enforcement officer is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker*, 443 U.S. at 145-46, 99 S.Ct. 2689.  Other circuits shed light on the instant issue.  The Sixth Circuit has concluded that, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the

**ORDER RE SUMMARY JUDGMENT MOTION-12**

accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir.1999).  An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause. *Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir.1999).

The Court finds Plaintiff has not alleged a deprivation of a constitutional right based on the record before the Court.  There is no evidence that exculpatory evidence was ignored or withheld prior to the probable cause determination.  The exculpatory evidence ultimately used by the prosecutor surfaced after probable cause was found and affirmed by the state judicial officers.  Mental health reports on Ms. Taylor, some of which indicated suicidal tendencies, were received and reviewed by the prosecution during the period of May 5, 2008 through November 12, 2008. And ballistic tests, with Plaintiff's counsel present, were conducted June 27, 2008.  On July 9, 2008, an autopsy report of Ms. Taylor was completed and signed by Defendant Fino.  A report from Cascade Ambulance which had transported Ms. Taylor to the hospital two days before her death for the purpose of detoxification was not received until December 18, 2008.  It is also noted that Plaintiff's trial had been continued a total of six times, either at the insistence or with the agreement of Plaintiff.

In making a determination whether a death is a suicide or a homicide, a prosecutor's reliance on the medical examiner's determination is often the exclusive basis for deciding whether or not to file and/or proceed with criminal charges.  The Court finds that the Defendants' conduct did not rise to level of arbitrariness in the constitutional sense.  Therefore, the Court finds that there were no constitutional violations based on the record.  If a plaintiff fails to meet the threshold of demonstrating a specific constitutional violation, "there is no necessity for further inquiries" and the analysis ends. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

Having found no specific constitutional violations as discussed above, the Court ends this analysis.   However, even if a specific constitutional violation

**ORDER RE SUMMARY JUDGMENT MOTION-13**

under the Fourteenth Amendment was established, the Court further finds the Defendant officers possess qualified immunity under the particular facts of this case. It is noted that the United States Supreme Court has refused to extend absolute immunity beyond a very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, "whose special functions or constitutional status requires complete protection from suit." *Hafer v. Melo,* 502 U.S. 21, 29 (1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)).

       3.      Post-Arrest--§1983 Claim For Unlawful Imprisonment Against Defendant Coroner; Immunity

Defendants assert that all claims against the Defendant coroner must be dismissed. Defendants argue that ample authority supports immunity for coroners. Specifically, Defendants argue, federal courts have widely granted immunity to physicians in public office—including coroners. Defendants contend that Plaintiff selectively quotes *Hoffman v. Halden,* 268 F.2d 280, 298-300 (9th Cir. 1959), involving a mental health official, and ignores other courts in this circuit which have applied absolute immunity to "State and County medical officers." *Hebert v. Morley,* 273 F. Supp. 800, 803 (C.D. Cal. 1967). Additionally, Defendants note, other circuits have granted this immunity to coroners. *See Lawyer v. Kernodle,* 721 F.2d 632, 636 (8th Cir. 1983) (citing *Burkes v. Callion,* 433 F.2d 318 (9th Cir. 1970)). Defendants conclude that Plaintiff advances no authority holding that coroners are not entitled to absolute immunity.

Plaintiff appears to argue that Defendant Fino is liable under §1983 because she failed to perform the autopsy of Ms. Taylor in a timely manner consistent with a standard of care to render a competent opinion as to the manner of death. Plaintiff states the evidence shows that Defendant Fino directly contributed to Plaintiff's unlawful imprisonment by not formally concluding that the gunshot wound was a contact wound until she received the State Crime Lab Report dated

**ORDER RE SUMMARY JUDGMENT MOTION-14**

September 8, 2008, six months after Ms. Taylor's death. Plaintiff asserts that Defendant Fino is not protected by immunity for her role in influencing evidence relied upon to detain Plaintiff for a period of approximately eight months. Plaintiff advances no further arguments in this regard.

The case law unambiguously finds coroners immune from § 1983 liability for negligent autopsies. In the leading case of *Lawyer v. Kernodle*, 721 F.2d 632, 635-36 (8th Cir.1983), a husband sued a medical examiner under § 1983 alleging that an incompetently performed autopsy of his wife led to the wrongful accusation he murdered his wife. The Eighth Circuit held that coroners have no liability under § 1983 when "physicians or coroners have acted within the permissible discretion of their authority" because coroners are entitled to qualified immunity in such circumstances, even if the performance of their duties has been negligent. *Id*. at 635-36.

Other federal courts have also found medical examiners and coroners immune when accused of bungling autopsies. *See Herbert v. Morley*, 273 F.Supp. 800, 802 (C.D.Cal.1967) (defendant coroner's immunity found "compelling" where allegations concerned acts taken in the scope of his official duties); *Willet v. Wells*, 469 F.Supp. 748, 752-53 (E.D.Tenn.1977) (defendant medical examiner and defendant coroner immune from liability where allegations of complaint related to conduct occurring within the scope of their official positions).

This Court sees no reason to deviate from the established rule, lest it open the floodgates for civil rights claims against coroners by acquitted criminal defendants who believe a coroner made a mistake in performing an autopsy or in reaching a conclusion about the cause or causes of death of a victim. This Court hesitates to apply prosecutorial immunity in the present case because the Ninth Circuit has not applied absolute immunity to investigators, a category of actor with duties similar to that of the coroner. *See, e.g., Branch v. Tunnell*, 937 F.2d 1382, 1385 (9th Cir.1991) (applying qualified immunity analysis to investigators accused of falsifying reports). Administrative and ministerial acts are not

**ORDER RE SUMMARY JUDGMENT MOTION-15**

accorded absolute immunity. *See, e.g., Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 435-36 (1993).  Plaintiff has not alleged that Dr. Fino intentionally falsified any portion of the autopsy report.  Plaintiff only alleges that Defendant Fino was "influenced" by Defendant officers, and retained the word "homicide" in her final report.

The Court finds that Plaintiff must do more than conclusorily plead that Defendant Fino's "autopsy report incorrectly concluded that the cause of Donna Taylor's death was homicide."  Complaint, ¶2.8.  It would seem possible that a contact wound could be the result of a close-range gunshot wound regardless of whether it was a suicide or homicide.   The Ninth Circuit has established a presumption that a prosecutor exercises independent judgment in determining whether there is probable cause on which to file criminal charges. *See Smiddy v. Varney* (" *Smiddy I* "), 665 F .2d 261, 265 (9th Cir.1981); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir.1988). "The prosecutor has a duty to measure the facts in the report by legal standards and decide whether they add up to probable cause to prosecute. The possibility of less than perfect investigative conduct on the part of the police is no doubt one reason the law requires an exercise of the prosecutor's informed discretion before the initiation of prosecution." *Smiddy v. Varney* (" Smiddy II "), 803 F.2d 1469, 1472 (9th Cir.1986). An investigator, and therefore a coroner, is not liable for damages incurred after the filing of a criminal complaint if the prosecutor has exercised independent judgment in making the probable cause determination. *Id*. The presumption of independent judgment by the prosecutor may be rebutted by pleading that the accused investigator acted with personal animus against the plaintiff. *Id.* at 1471.

Facts indicating personal animus include knowingly presenting false information to the prosecutor, or knowingly withholding relevant information from the prosecutor. *See Smiddy I*, 665 F.2d at 266-67; Smiddy II, 803 F.2d at 1471. In the absence of such allegations, the Court must presume regularity in the prosecutor's decision to charge the plaintiff, a presumption that insulates

**ORDER RE SUMMARY JUDGMENT MOTION-16**

Defendant Fino from liability for the arrest and prosecution of Plaintiff, even if Dr. Fino had performed her duties negligently. *See Smiddy II*, 803 F.2d at 1472. Accordingly, Plaintiff must plead facts sufficient to rebut the presumption that the prosecutor exercised independent judgment in deciding to prosecute Plaintiff for murder. Otherwise, Defendant Fino cannot, as a matter of law, be found liable for any damages sustained <u>after</u> the prosecutor filed the criminal complaint.

In conclusion, the Court finds that Defendant Fino is immune for liability for any alleged negligence in completing Ms. Taylor's autopsy. To begin, Plaintiff has failed to sustain his burden of showing that the right to a non-negligent autopsy was clearly established in federal law. *See Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991) (to overcome immunity defense, plaintiff bears the initial burden of proving that a right is clearly established). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The plaintiff must "offer more than general conclusory allegations" that the defendants violated a constitutional right. *Backlund v. Barnhart*, 778 F.2d 1386, 1389 (9th Cir.1985). Plaintiff has not cited any case that holds that the Fourteenth Amendment protects a criminal defendant's right to a non-negligently performed autopsy of the deceased victim. Indeed, common sense and sound public policy suggest that the role of coroner, for purposes of § 1983 liability, must include some room for error. Coroners have a statutory duty to the public to use their specialized knowledge to inquire into and determine the circumstances, manner, and cause of all sudden, violent, or unusual deaths. See R.C.W. § 68.50.010.

Imposing § 1983 liability on coroners for negligence could have the unhappy consequence of creating an environment where coroners could be inclined to shade their investigations and reports in such a way as to minimize their personal liability rather than to provide candid and illuminating findings helpful to those entrusted with the task of investigating crimes. In other words,

**ORDER RE SUMMARY JUDGMENT MOTION-17**

medical examiners must not be chilled in rendering good-faith findings regarding autopsies without fearing retaliation from those who may ultimately be accused of homicide. *See Imbler v.. Pachtman*, 424 U.S. 409, 423 (1976) (noting a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust"). The court finds that Defendant Fino is not subject to § 1983 liability in her individual capacity for the alleged negligent performance of the autopsy of Ms. Taylor. For the reasons stated above, this claim is dismissed with prejudice.

**C.    Municipal Liability(Defendants Chelan County and its Sheriff's Office)**

Defendants argue that Chelan County and its Sheriff s Office cannot be held liable under §1983 for the actions alleged in the complaint because Plaintiff has failed to allege the promulgation of an "official custom, practice or policy" to establish municipal liability. Further, a local government cannot be liable under § 1983 based on respondeat superior under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978). Defendants further assert that a sheriff's office is not a separate legal entity from the county.

Defendants move to dismiss all claims against the Defendants Chelan County and its Sheriff's Office. Defendants argue Defendant County cannot be held liable under §1983 solely under a theory of respondeat superior. *Monell v. New York Department of Social Servs*., 436 U.S. 658, 691 (1978). In order for the Plaintiff to impose § 1983 liability on the County, it must identify an official municipal policy or widespread municipal custom that caused his injuries. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 403-04 (1997). For purposes of Section 1983 liability, the *Trevino* court explained municipal custom:

> The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." [citations omitted]. Liability for improper custom may not be predicated on isolated or sporadic incidents; it

**ORDER RE SUMMARY JUDGMENT MOTION-18**

> must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy. [citations omitted].

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Defendants argue that the events surrounding the arrest of Plaintiff constituted an isolated incident, unrelated to any official policy or widespread custom of the city. Therefore, in the absence of other evidence of a permanent, well-settled policy, the claims alleged cannot give rise to municipal liability. Defendants conclude that Plaintiff has failed to identify any policy or widespread custom that caused his alleged injuries. As such, the claims against the Defendants County and its Sheriff's Office should be dismissed.

Plaintiff's Complaint merely alleges that the County was responsible for the acts of its agents and employees. In the pleadings, Plaintiff does not produce any evidence that results in a conflict of material fact to be solved by a jury with regards to inadequate training, any official policy/procedures or widespread custom to support a *Monell* claim against the Defendant County and its Sheriff's Office. Based on the current state of the record, it would appear this was an isolated incident. Therefore, the Court grants summary judgment in favor of Defendants County and its Sheriff's Office, and the claims against Defendants County and its Sheriff's Office are dismissed.

**D.    Official Capacity of Claim**

In addition to their individual capacities, the Defendant officers and Defendant coroner have also been sued in their "official" capacities. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent...." *Monell v. Department of Social Serv. of New York City*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978). The Supreme Court explained the difference between personal-capacity and official-capacity suits as follows:

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as

**ORDER RE SUMMARY JUDGMENT MOTION-19**

> objectively reasonable reliance on existing law. In an
> official-capacity action, these defenses are unavailable.
> The only immunities that can be claimed in an
> official-capacity action are forms of sovereign immunity
> that the entity, qua entity, may possess, such as the
> Eleventh Amendment. *Kentucky v. Graham*, 473 U.S.
> 159, 166-67, 105 S.Ct. 3099, 3105-06 (1985) .

As discussed above, there is no evidence that what the Defendant officers or Defendant coroner did amounted to a constitutional violation. Defendant officers and Defendant Fino did not violate clearly-established law at the time of the events in question, and thus each defendant is be dismissed from the case against him or her in their personal capacity.

A claim against a state or municipal official in her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In *Kentucky*, the Supreme Court stated that an official capacity claim is simply '"another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 165-66 (*quoting Monell*, 436 U.S. at 690 n.55(1978)). Therefore, when a §1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant. *See Cotton v. District of Columbia*, 421 F.Supp.2d 83, 86 (D.D.C. 2006). This Court will dismiss the official capacity claims against the individual Defendants herein as duplicative.

### E.   Pendent Common Law Claims

All that remains in this case, once Plaintiff's claim for violation of 42 U.S.C. §1983 is dismissed, are state law tort claims (unlawful imprisonment, defamation, and negligence). "[I]n the ususal case in which federal-law claims are eliminated before trial, the balance of factors . . . points toward declining to exercise jurisdiction over the remaining state-law claims." *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir.1002) (*quoting Carnegie-Mellon Univ.*

**ORDER RE SUMMARY JUDGMENT MOTION-20**

*v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988).  Under 28 U.S.C. §1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim  . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Court having dismissed Plaintiff's federal claims, declines to exercise supplemental jurisdiction over any remaining state law claims. The state law claims are accordingly dismissed without prejudice and subject to the provision, if applicable, of 28 U.S.C. §1367(d).

**III.  CONCLUSION**

Defendants' Motion For Summary Judgment, Ct. Rec. 14, is **GRANTED in part**.   The federal claims against the all Defendants are dismissed with prejudice. The remaining state law claims are dismissed without prejudice.  All of the Defendants are awarded judgment on the federal claims asserted against them, consistent with this order.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter judgment accordingly and forward copies of the judgment and this Order to counsel of record.  The file shall be closed.

**DATED** this __26th__ day of April, 2011.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge


**ORDER RE SUMMARY JUDGMENT MOTION-21**